LUCIE C. CARSON v. THE NATIONAL LIFE INSURANCE COMPANY ET AL.

(Filed 15 March, 1916.)

1. **Appeal and Error—Assignments of Error—Immaterial Error.**

A new trial will not be ordered on appeal when the assignments of error, considered as a whole, are not regarded of sufficient importance, or so material, as to disturb the verdict, and when, dealt with *seriatim,* there is no technical error.

2. **Same—Insurance, Life—Policy—Assignment—Evidence.**

Where in an action upon a policy of life insurance the plaintiff relies solely on the validity of an assignment thereof made by deceased, and the jury has found that the physical assignment had been made, but that it was procured by fraud, the exclusion of her testimony to the effect that the policy sued on was her property is immaterial.

3. **Appeal and Error — Insurance, Life — Policy — Assignment — Evidence — Verdict.**

In this action upon a policy of life insurance the only question presented on appeal was whether there was error committed by the jury in rendering a verdict adverse to plaintiff on the issue of whether an assign-

. ment of the policy was procured through fraud. *Held*, excluding testimony of plaintiff of negotiations before the assignment was not erroneous, the assignment being in writing and in evidence; and it is further held in this case that the evidence was objectionable, it being of conversation between the plaintiff and her husband, and irrelevant, not bearing upon the issue of fraud.

**4. Evidence—Deceased—Transactions—Surety—Interest—Trials.**

In an action involving the validity of an assignment, by the insured, since deceased, of a life insurance policy, testimony of the surety on the plaintiff's prosecution bond as to what occurred at the time is incompetent under the statute, he being interested in the event of the action, and further incompetent when the proposed evidence appears in the writing itself.

**5. Evidence—Deceased—Insurance—Policies—Assignments—Evidence.**

Where an action upon a policy of life insurance depends upon the validity of an assignment of the policy to the plaintiff, which had been made by the deceased insured, it is competent for the widow of the deceased to testify as to an agreement made in the presence of the plaintiff's husband, also present at the trial, and who was acting for her, that the deceased was to pay back the money and get the policy again.

**6. Appeal and Error—Questions and Answers—Harmless Error.**

Certain questions asked a witness in this case, involved in an issue of fraud in securing an assignment of a life insurance policy, taken together, are held competent, though the first may be objectionable, but this and the second question being preliminary to the third, which was competent and involved them, it is not held as reversible error.

**7. Contracts—Fraud—Burden of Proof—Insurance—Policies—Assignments.**

In an action involving the issue as to whether an assignment of a life insurance policy had been procured by fraud, the burden of proof is on the party alleging the fraud, when it is shown that the insured had signed the writing.

APPEAL by plaintiff from *Bond, J.,* at August Term, 1915, of PITT.

Civil action to recover the amount of a certain policy of insurance issued by the defendant insurance company on the life of Eason Matthews and payable to his estate. The administrator of Matthews is a party to the action.

The plaintiff claims that she is the owner of said policy by reason of an assignment made to her by the insured. The defendants deny the execution of the assignment, and allege that if it was executed it was procured by fraud.

The jury returned the following verdict:

1. Did the insured, under the policy in suit, fail to pay premium due on 5 May, 1911, or within thirty-one days thereafter, as alleged, and thereby cause policy to become lapsed? Answer: "Yes."

2. Did Eason Matthews sign certificate of health dated 3 July, 1911? Answer: "No."

3. Was said policy reinstated upon consideration of the certificate of good health bearing date 3 July, 1911, and in reliance upon statements therein? Answer: "Yes."

4. Did said certificate of health, if made by Eason Matthews, represent that insured was in good health on the date thereof, to his best knowledge and belief? Answer: "Yes."

5. Was Eason Matthews, on 3 July, 1911, in good health, the best of his knowledge and belief? Answer: "No."

6. Did the insured execute the assignment of the policy in suit to Lucy J. Carson, the plaintiff, as alleged? Answer: "Yes."

7. If so, was said assignment procured through the fraud of S. T. Carson, agent of the plaintiff, as alleged? Answer: "Yes."

8. Is the defendant company indebted on said policy, and, if so, to whom, and in what amount? Answer: "No; owes nothing on it."

Judgment was entered upon the verdict in favor of the defendant insurance company, and the plaintiff appealed.

*Julius Brown, S. J. Everett, and W. F. Evans for plaintiff.*
*D. H. Bland, L. G. Cooper, and Harry Skinner for defendant.*

ALLEN, J. It is stated in the case on appeal, as an admission of the plaintiff made on the trial, that she has no title to the policy of insurance sued on except by virtue of the assignment made to her by the insured, and as the jury has found that this assignment was procured by fraud, she cannot recover while this finding stands.

It is, therefore, only necessary to examine the assignments of error bearing on this issue unless there is error in these, and upon full consideration of the record we find none.

If these assignments are considered as a whole, they are not of sufficient importance and were not so material as to justify disturbing the verdict, and when dealt with *seriatim* there is no technical error.

1. The plaintiff, who was examined as a witness, was asked the question, "Was policy No. 207800, issued by the National Life Insurance Company on the life of Eason Matthews, your property, and is it now your property?" to which she would have answered "Yes." The question and answer were excluded, and the plaintiff excepted.

It is sometimes competent for a party to testify to the ownership of property which is in dispute, but as the sixth issue, finding that the assignment was executed to the plaintiff, was answered in her favor, and as the only question in controversy on this phase of the case was on the issue of fraud in procuring the assignment, the question and answer are immaterial.

2. The same witness was asked, "State if you know of any negotiations for said policy before the assignment to you," to which she would

have answered, "Yes, sir; we had talked of my buying the policy." This was excluded, and the plaintiff excepted.

This question assumes that there was an assignment of the policy, and was asked before the assignment was introduced in evidence, and the answer is objectionable upon the additional ground that it purports to give an account of a conversation between the plaintiff and her husband. Again, it does not bear upon the issue of fraud, but upon the question of the purchase and assignment of the policy.

3.   S. T. Carson, husband of the plaintiff, and who was the only other person present at the time the assignment was made, was examined as a witness and was asked, "Did you explain to Mr. Matthews what he was signing when he signed this paper?" to which the witness would have replied that he did.   This evidence was excluded, and the plaintiff excepted.

S. T. Carson is a surety on the prosecution bond of the plaintiff, and as such was interested in the event of the action and could not testify to a conversation with the deceased, under section 1631 of Revisal.   *Mason v. McCormick,* 75 N. C., 263.

Again, the only thing proposed to be proved by the witness is that he told the insured that the paper he was signing was an absolute assignment of the policy, and this appeared from the paper itself.

4.   Mrs. Matthews, widow of the insured, who was examined as a witness, was asked, "State if you know the contract and agreement between Mr. Carson and your husband at the time he took out this policy," and she answered:   "The agreement was that Mr. Carson was to pay him his money back, with the interest on it, and Mr. Carson was to give him up the policy."   This was objected to by the plaintiff.

We see no reason for refusing to permit the witness to speak of the agreement with the husband of the plaintiff, who was present at the trial, and there is nothing to show that she was not speaking of her own knowledge.

It also appears from the evidence of S. T. Carson that he gave substantially the same account of the transaction at the time the policy was taken out.   This evidence also refers to the taking out of the policy and not to fraud in procuring its assignment.

5.   The same witness was permitted to state that "Eason Matthews was not able to go to Carson, so sent for him to come, but never got him there."   This was objected to by the plaintiff.

This bears remotely on the issue of fraud, but as she was testifying of her own knowledge so far as the record discloses, the evidence was competent.

6.   J. W. Coburn, administrator of Eason Matthews, was examined as a witness, and the following questions and answers appear in his evidence, to which the plaintiff excepted:

Q. Did you ever see Mr. Carson for Mr. Matthews about returning the policy? Answer: "Yes, during the year 1911."

Q. State if you, at the instance of Mr. Matthews, went to Mr. Carson to get the policy. Answer: "Yes, sir."

Q. State what you said to Mr. Carson in reference to the policy? Answer: "I went to Mr. Carson and told him Mr. Matthews got me to come to him and tell him he wanted to take the policy up."

The first of these questions might be objectionable, standing alone, because it involves inferentially a declaration of the insured, Matthews; but this and the succeeding questions were only preliminary to the last one, and the answer to the last, which gives an account of the conversation between the witness and S. T. Carson, was competent and involves all that was in the preceding questions. When he told Mr. Carson that the insured got him to come to him and tell him he wanted to take up the policy, it was equivalent to saying that he went to see him at the instance of Mr. Matthews.

7. His Honor charged the jury, among other things, as follows: "If you find that Matthews signed the paper voluntarily, and if he knew what was in the paper that his mark was being made to, then the burden would be on the defendant to show by the greater weight of the evidence that it was procured by fraud." This was excepted to by the plaintiff, but it properly places the burden of proof on the defendant, and there is nothing of which the plaintiff can justly complain in the charge.

There are exceptions bearing upon the other issues, some of them presenting questions that are not free from difficulty, but, as we have before stated, it is not necessary to consider them, in view of the finding upon the seventh issue, which makes it impossible for the plaintiff to recover.

No error.